[Crim. No. 4313. Second Dist., Div. Three. July 29, 1949.]

THE PEOPLE, Respondent, v. FRIDOLIN J. DARGO, Appellant.

Elizabeth Cassidy for Appellant.

Fred N. Howser, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

SHINN, P. J.—Fridolin J. Dargo was convicted in a jury trial of the offense of grand theft and of second degree burglary. His application for probation was denied, he was sentenced to the state prison, sentences to run concurrently, execution of the sentence was suspended and he was referred to the California Youth Authority, the Youth Authority refused to accept him, and the sentences theretofore imposed were ordered carried into execution. He appeals from the judgments and from an order denying his motion for new trial.

Defendant has been before this court on other occasions. (*In re Dargo,* 81 Cal.App.2d 205 [183 P.2d 282] ; *In re Dargo,*

86 Cal.App.2d 114 [194 P.2d 34].) In his extensive briefs he urges 12 grounds for reversal of the judgments. The first to be considered is the claim of insufficiency of the evidence.

On the night of August 4, 1948, some time after 10:30 o'clock, a 1947 Chevrolet convertible automobile was stolen from Joe Dooley's automobile sales lot at 330 South Vermont Avenue, in Los Angeles. The keys of the automobile, with other keys, were in the drawer of a desk in an office building which had been locked up. Entrance to the office had been made through a rear window, the glass of which was broken and the desks and cabinets had been broken into. Some cigarette lighters and also automobile keys, including the Chevrolet key, had been taken and the Chevrolet had been driven from the lot. Two days later it was found in the custody of the West Covina Police Department. Donald Gannon, 16 years of age, testified for the People in substance as follows: He knew defendant by sight and met him at Olympic and Bixel about midnight August 4th; defendant was endeavoring to start automobiles on Olympic Boulevard by making connection between ignition wires with a penny; Jack Rector was with Gannon; defendant was alone; defendant asked Gannon if he wished to assist in the theft of a car and Gannon agreed; defendant broke in the rear window of the Dooley office and the two went inside, ransacked the desks and took the automobile keys and lighters. Gannon identified the lighters shown to him as those that had been stolen. He and defendant took the Chevrolet and started for Riverside, where defendant said they could hide out. On the way they stopped briefly at the home of a girl friend of defendant; at West Covina they ran out of gas and left the car on the street; they left the ignition keys in the car but threw away the other keys and two cigarette lighters and hitchhiked back to Los Angeles. Defendant at that time gave Gannon one cigarette lighter. Gannon, at the time of trial, was in a forestry camp at Calabasas where he had been sent for a period of six or nine months as a ward of the juvenile court after he had admitted participation in the thefts. Another witness for the State was Jackie Rector, aged 15. He was acquainted with defendant. He was present at the meeting of Gannon and defendant, the night of August 4th, and heard defendant ask Gannon to go with him to "hot wire" a car; Gannon agreed and the two left. Jack Fornte, aged 14, testified that he was acquainted with defendant, Gannon and Rector; on the afternoon of August 5 he talked

with defendant, asked him if it was true he had stolen a car and defendant said that he had, a 1947 Chevrolet; that they had broken in and had taken the keys and cigarette lighters and had driven the car until it ran out of gas. M. S. Hansen, police officer of West Covina, met defendant and Gannon about 6 a. m. on August 5th in West Covina at a point about a mile and a half from where the Chevrolet had been abandoned. He stopped them, defendant identified himself, said they had been visiting his aunt in Pomona, and they were allowed to go on. Another officer testified to having found the cigarette lighters in a field about 25 feet from the car, and at the same place some scattered keys. The car was returned to the owner on August 6th. R. P. Doran, a Los Angeles police officer, talked to defendant on the 16th, when defendant denied all knowledge of the theft. Gannon was brought into their presence and related the story of the theft in the presence of defendant, and when asked if the account were true defendant stated that he knew nothing about it. The keys and cigarette lighters were those that had been stolen; the automobile was proven to be worth not less than $400. Defendant on the stand denied the testimony of Gannon, saying that he had been at home on the night of the theft, that he had had a slight argument with his mother, left home about 11 o'clock to go to the home of his aunt in Imperial Valley, caught a ride on a truck to a point near Riverside, met a friend named Charlie, whose last name he could not remember, and started to hitchhike back to Los Angeles; he got a ride as far as West Covina where they were let out, were questioned by a police officer and returned to Los Angeles. He admitted having given Gannon a cigarette lighter but claimed he had purchased it. He testified that he had been to the Dooley secondhand lot looking at cars, expecting his stepfather to buy one for him. He was questioned by Officer Doran as to how his fingerprint could have been impressed upon the window sill of Mr. Dooley's private office. He accompanied the officers to the Dooley office and stated that he had been in the office, talking to a man he believed to be Dooley and may have placed his hand upon the window sill. The fingerprint was not clear and was not offered in evidence. Mr. Dooley denied having seen defendant prior to his arrest. Defendant's stepfather testified that defendant was at home until about 11 o'clock p. m. on the night of August 4th; that defendant then said he was going to Riverside and was given $2.00 by his stepfather. He testified to having made a persistent effort to

locate the truck driver with whom defendant claimed to have ridden, but that he had been unable to locate him.

The foregoing is the substance of the evidence, and it is clearly sufficient to support the verdicts of guilty.

Defendant's briefs consist of 200 pages, considerably in excess of the entire transcript of the evidence. The arguments as to the sufficiency of the evidence dwell upon inconsequential imperfections such as are usually found in the narration of events by lay witnesses. The testimony of each witness for the People is dissected and criticized for the discovery of trivial inaccuracies of speech or recollection. All this is wasted effort. It is an attack upon the credibility of the witnesses which can avail defendant nothing on appeal. That the jurisdiction of this court does not extend to a review of questions of fact is entirely overlooked.

 Several statements of the prosecutor made during argument are quoted in support of the claim that he was guilty of misconduct. In considering these charges, we have examined carefully both the opening and closing arguments of the prosecutor, which appear in the reporter's transcript. With one exception, we think the challenged statements constituted a fair and dispassionate discussion of the evidence, accompanied by appropriate and proper comments thereon. The following argument of the district attorney, however, was in our opinion inappropriate and improper: "There is one other thing that I would like to invite your attention to, although the Court will instruct you, I believe that you are not allowed to speculate on matters. Yet there must have occurred to you the idea as to why the defendant, a boy of less than majority, under 21, is on trial before you here in the Superior Court. The only answer that I can give you, ladies and gentlemen, and I am going to have to make it blunt, is that it doesn't concern you. Regular and due processes have been gone through to bring the defendant for trial here before you in the Superior Court the same as any other defendant, regardless of age, charged with felony offenses and you cannot permit yourselves to be concerned with those other matters, no more than you can permit yourselves to be guided by a sympathy because of his youth. Those matters again, to put them bluntly, are none of your business. I don't mean to be crude or anything, but sometimes the vernacular drives the point home better than trying to be kind and sweet and smooth it over. You just have to consider the facts and the law in

this case and that alone.'' The basis of defendant's complaint is that the statements indicated as a fact that he was a dangerous character who should be prosecuted for a felony, even though his accomplice, Gannon, also a minor, was treated as a juvenile offender. No objection was made to the argument. It was not assigned as misconduct. The court was not requested to instruct the jury to disregard it. The evidence of guilt is conclusive. Under these circumstances the impropriety of the argument will not warrant a reversal.

■ Defendant complains of the failure of the court to instruct that a witness may be impeached by proof of his conviction of a felony and also complains of a ruling of the court to the effect that the incarceration of the minor witness, Gannon, did not amount to his conviction of a felony. The point is not well taken. The proceeding against the juvenile which resulted in his detention was not a prosecution for the commission of a crime. (*In re Dargo, supra,* 81 Cal.App.2d 205; 86 Cal.App.2d 114.) The jury was instructed as to the necessity of corroboration of the testimony of an accomplice and the instructions as a whole were comprehensive and correct. ■ There was no occasion to give defendant's requested instructions on circumstantial evidence. The circumstantial evidence was merely incidental to the direct evidence of defendant's guilt.

The defendant has been fairly tried, the record discloses no error, and the evidence was such as to satisfactorily establish guilt.

The judgments and order denying motion for new trial are affirmed.

Wood, J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 25, 1949.